United States District Court
Southern District of Ohio
Western Division

| | |
|---|---|
| Paul Koren<br>c/o Laufman Napolitano, LLC<br>4310 Hunt Road<br>Cincinnati, Ohio 45242<br><br>        Plaintiff,<br><br>   v.<br><br>Jim Neil<br>c/o Hamilton County Sheriff's Office<br>1000 Sycamore Street<br>Cincinnati, Ohio 45202<br><br>     and<br><br>Jonathan Howell<br>c/o Hamilton County Sheriff's Office<br>1000 Sycamore Street<br>Cincinnati, Ohio 45202<br><br>     and<br><br>Zachary Swearingen<br>c/o Hamilton County Sheriff's Office<br>1000 Sycamore Street<br>Cincinnati, Ohio 45202<br><br>     and<br><br>Fritz Elsasser<br>c/o Hamilton County Sheriff's Office<br>1000 Sycamore Street<br>Cincinnati, Ohio 45202<br><br>     and<br><br>Cody Collins<br>c/o Hamilton County Sheriff's Office<br>1000 Sycamore Street<br>Cincinnati, Ohio 45202 | Case No. 1:21-cv-009<br><br>Complaint<br><br>(Jury Demand Endorsed Hereon) |

and

Laura Ray
c/o Hamilton County Sheriff's Office
1000 Sycamore Street
Cincinnati, Ohio 45202

and

April Jones
c/o Hamilton County Sheriff's Office
1000 Sycamore Street
Cincinnati, Ohio 45202

and

John/Jane Doe(s) 1-2
Names/Addresses Unknown

and

John/Jane Doe(s) 3-5
c/o Hamilton County Sheriff's Office
1000 Sycamore Street
Cincinnati, Ohio 45202

and

Timothy Brown
c/o Hamilton County Sheriff's Office
1000 Sycamore Street
Cincinnati, Ohio 45202

and

Brandon Sturgeon
c/o Hamilton County Sheriff's Office
1000 Sycamore Street
Cincinnati, Ohio 45202

and

Robert Spencer
c/o Hamilton County Sheriff's Office
1000 Sycamore Street
Cincinnati, Ohio 45202

and

Brian Bucker
c/o Hamilton County Sheriff's Office
1000 Sycamore Street
Cincinnati, Ohio 45202

and

Dominic Pierani
c/o Hamilton County Sheriff's Office
1000 Sycamore Street
Cincinnati, Ohio 45202

and

Cody Herbig
c/o Hamilton County Sheriff's Office
1000 Sycamore Street
Cincinnati, Ohio 45202

and

Matthew Collini
c/o Hamilton County Sheriff's Office
1000 Sycamore Street
Cincinnati, Ohio 45202

and

Melissa Kilday
c/o Hamilton County Sheriff's Office
1000 Sycamore Street
Cincinnati, Ohio 45202

and

John/Jane Doe 6
c/o Hamilton County Sheriff's Office
1000 Sycamore Street
Cincinnati, Ohio 45202

and

John/Jane Doe(s) 7-10
c/o Hamilton County Sheriff's Office
1000 Sycamore Street
Cincinnati, Ohio 45202

  and

Mark Schoonover
c/o Hamilton County Sheriff's Office
1000 Sycamore Street
Cincinnati, Ohio 45202

  and

NaphCare, Inc.
c/o National Service Information, Inc.
145 Baker Street
Marion, Ohio 43302

  and

Nurse K. Hale
c/o NaphCare, Inc.
1000 Sycamore Street
Cincinnati, Ohio 45202

  and

Mark Taylor
c/o NaphCare, Inc.
1000 Sycamore Street
Cincinnati, Ohio 45202

  and

Darlene Graham
c/o NaphCare, Inc.
1000 Sycamore Street
Cincinnati, Ohio 45202

  and

John/Jane Doe 11
c/o NaphCare, Inc.
1000 Sycamore Street
Cincinnati, Ohio 45202

    and

John/Jane Doe(s) 12-15
c/o NaphCare, Inc.
1000 Sycamore Street
Cincinnati, Ohio 45202

    Defendants.

## I. Preliminary Statement

Paul Koren, a retired 70-year-old man with no prior criminal record, spent nearly five hours strapped in a restraint chair in the Hamilton County Justice Center. Mr. Koren was forcibly thrown into the chair by corrections officers who deemed he had been "disruptive" while being admitted to the jail. Mr. Koren posed no threat to himself or anyone else, nor did he physically resist, in any way. Regardless, corrections officers threw him in the restraint chair and left him to suffer, immobile and bound, for hours. Mr. Koren was made to suffer this continuing torment even though it was noted repeatedly that he was "pleasant" and "relaxed" while in the chair. Mr. Koren's requests to be released were ignored. Even his basic need to use the bathroom went unheeded and he was finally forced to bear the indignity of urinating on himself. Sadly, all the foregoing was in keeping with the policies or customs of the Hamilton County Sheriff and NaphCare, the private medical provider at the jail.

Mr. Koren now alleges violations of his civil rights under the Fourth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

## II. Jurisdiction and Venue

1. This claim is brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction to hear this case per 28 U.S.C. §§ 1331, 1343 (3) and (4).

2.     Venue in the United States District Court for the Southern District of Ohio, Western Division, is proper pursuant to 28 U.S.C. § 1391.

### III. Parties

3.     Plaintiff Paul Koren ("Mr. Koren") is a citizen of the State of Ohio who, during all relevant times, resided within the Southern District of Ohio.

4.     Defendant Jim Neil ("Defendant Sheriff Neil") was, during all relevant times, the duly elected Sheriff of Hamilton County, Ohio, a unit of local government organized under the laws of the State of Ohio. Defendant Jim Neil was the policymaker for the Hamilton County Sheriff's Office, which operates the Hamilton County Justice Center ("HCJC") in Cincinnati, Ohio. Defendant Neil is sued in both his individual and official capacities.

5.     Jonathan Howell ("Defendant Officer Howell") was on or about January 7, 2019 a corrections officer assigned to the intake area at the HCJC. He is sued in his individual capacity for actions taken under color of state law.

6.     Zachary Swearingen ("Defendant Officer Swearingen") was on or about January 7, 2019 a corrections officer assigned to the intake area at the HCJC. He is sued in his individual capacity for actions taken under color of state law.

7.     Fritz Elsasser ("Defendant Sergeant Elsasser") was on or about January 7, 2019 a sergeant assigned to the intake area at the HCJC. He is sued in his individual capacity for actions taken under color of state law.

8.     Cody Collins ("Defendant Officer Collins") was on or about January 7, 2019 a corrections officer assigned to the intake area at the HCJC. He is sued in his individual capacity for actions taken under color of state law.

9. Laura Ray ("Defendant Officer Ray") was on or about January 7, 2019 a corrections officer assigned to the intake area at the HCJC. She is sued in her individual capacity for actions taken under color of state law.

10. April Jones ("Defendant Officer Jones") was on or about January 7, 2019 a corrections officer assigned to the intake area at the HCJC. She is sued in her individual capacity for actions taken under color of state law.

11. John/Jane Doe(s) 1-2 ("Defendant Transport Doe(s)") were on or about January 7, 2019 law enforcement officer(s) who transported Mr. Koren to the HCJC and placed him in the custody of the Sheriff. The identities of these defendants are presently unknown to Mr. Koren. Their identities are uniquely within the knowledge and control of other defendants. Their proper names will be added to this action as their identities become known. He/She/They is/are sued in his/her/their individual capacity(ies) for actions taken under color of state law.

12. John/Jane Doe(s) 3-5 ("Defendant Intake Doe(s)") were on or about January 7, 2019 corrections officer(s), medical, psychological, or nursing personnel, and/or supervisors assigned to and/or working in the intake area at the HCJC. The identities of these defendants are presently unknown to Mr. Koren. Their identities are uniquely within the knowledge and control of other defendants. Their proper names will be added to this action as their identities become known. He/She/They is/are sued in his/her/their individual capacity(ies) for actions taken under color of state law.

13. Timothy Brown ("Defendant Officer Brown") was on or about January 7, 2019 a corrections officer assigned to and/or working in a housing unit located on the second floor of the north building of the HCJC. He is sued in his individual capacity for actions taken under color of state law.

14. Brandon Sturgeon ("Defendant Officer Sturgeon") was on or about January 7, 2019 a corrections officer assigned to and/or working in a housing unit located on the second floor of the north building of the HCJC. He is sued in his individual capacity for actions taken under color of state law.

15. Robert Spencer ("Defendant Officer Spencer") was on or about January 7, 2019 a corrections officer assigned to a housing unit located on the second floor of the north building of the HCJC. He is sued in his individual capacity for actions taken under color of state law.

16. Brian Bucker ("Defendant Officer Bucker") was on or about January 7, 2019 a corrections officer assigned to and/or working in a housing unit located on the second floor of the north building of the HCJC. He is sued in his individual capacity for actions taken under color of state law.

17. Dominic Pierani ("Defendant Officer Pierani") was on or about January 7, 2019 a corrections officer assigned to and/or working in a housing unit located on the second floor of the north building of the HCJC. He is sued in his individual capacity for actions taken under color of state law.

18. Cody Herbig ("Defendant Officer Herbig") was on or about January 7, 2019 a corrections officer assigned to a housing unit located on the second floor of the north building of the HCJC. He is sued in his individual capacity for actions taken under color of state law.

19. Matthew Collini ("Defendant Officer Collini") was on or about January 7, 2019 a corrections officer assigned to and/or working in a housing unit located on the second floor of the north building of the HCJC. He is sued in his individual capacity for actions taken under color of state law.

20. Melissa Kilday ("Defendant Sergeant Kilday") was on or about January 7, 2019 a sergeant assigned to and/or working in a housing unit located on the second floor of the north

building of the HCJC. She is sued in her individual capacity for actions taken under color of state law.

21. John/Jane Doe 6 was on or about January 7, 2019 a corrections officer and/or supervisor assigned to and/or working in a housing unit located on the second floor of the north building of the HCJC identified as "North 21." Mr. Koren was under the care, supervision, and control of John/Jane Doe 6 while in the restraint chair. John/Jane Doe 6 made several notations on the HCJC's "Restraint Chair Form" which appear to bear the initials "BR." The identity of this defendant is presently unknown to Mr. Koren. His/Her identity is uniquely within the knowledge and control of other defendants. His/Her proper name will be added to this action as his/her identity becomes known.

22. John/Jane Doe(s) 7-10 ("Defendant Housing Unit Doe(s)") were on or about January 7, 2019 corrections officer(s) and/or supervisors assigned to and/or working in a housing unit located on the second floor of the north building of the HCJC identified as "North 21." The identities of these defendants are presently unknown to Mr. Koren. Their identities are uniquely within the knowledge and control of other defendants. Their proper names will be added to this action as their identities become known. He/She/They is/are sued in his/her/their individual capacity(ies) for actions taken under color of state law.

23. Mark Schoonover ("Defendant Schoonover") was, during all relevant times, the Chief Deputy of the Hamilton County Sheriff's Office and responsible for the operation of the HCJC and was therefore a policy maker for the Hamilton County Sheriff's Office.

24. NaphCare, Inc. ("Defendant NaphCare") is a foreign corporation doing business within the Southern District of Ohio. During all relevant times, Defendant NaphCare was contracted to provide medical and psychiatric services to inmates at the HCJC and a policy maker for the Hamilton County Sheriff's Office.

25. Nurse K. Hale ("Defendant Nurse Hale") was on or about January 7, 2019 an LPN employed by NaphCare and assigned to and/or working in a housing unit located on the second floor of the north building of the HCJC. Defendant Nurse Hale made several notations on NaphCare's "Restraint/Seclusion Observation Log" which bears her name "K. Hale, LPN" and her initials "K.H." The full name of Defendant Nurse Hale is presently unknown to Mr. Koren. His/Her identity is uniquely within the knowledge and control of other defendants. His/Her full name will be added to this action as his/her identity becomes known. He/She is sued in her individual capacity for actions taken under color of state law.

26. Mark Taylor ("Defendant Paramedic Taylor") was on or about January 7, 2019 a paramedic employed by NaphCare and assigned to and/or working in a housing unit located on the second floor of the north building of the HCJC. He is sued in his individual capacity for actions taken under color of state law.

27. Darlene Graham ("Defendant Nurse Graham") was on or about January 7, 2019 a nurse employed by NaphCare and assigned to and/or working in the HCJC. She is sued in her individual capacity for actions taken under color of state law.

28. John/Jane Doe 11 was on or about January 7, 2019 a medical, psychological, or nursing personnel and/or supervisor assigned to and/or working in the HCJC. He/She/They interacted with Mr. Koren while he was in a restraint chair. Mr. Koren was under the care, supervision, and control of John/Jane Doe 11 while in the restraint chair. John/Jane Doe 11 made several notations on NaphCare's "Restraint/Seclusion Observation Log" which bear a signature and initials which are illegible. The identity of this defendant is presently unknown to Mr. Koren. His/Her identity is uniquely within the knowledge and control of other defendants. His/Her proper name will be added to this action as his/her identity becomes known.

29. John/Jane Doe(s) 12-15 ("Defendant Medical Doe(s)") were on or about January 7, 2019 medical, psychological, or nursing personnel and/or supervisors assigned to and/or working in the HCJC. He/She/They interacted with Mr. Koren while he was in a restraint chair. He/She/They is/are sued in his/her/their individual capacity(ies) for actions taken under color of state law.

## IV. Facts

30. Mr. Koren incorporates all preceding allegations as if fully restated herein, and further alleges as follows:

31. Mr. Koren was attacked in his home by armed assailants in the early morning hours of January 7, 2019. He was 70 years old at the time.

32. Law enforcement officers responded and arrested several of Mr. Koren's assailants, taking them to the HCJC.

33. During the investigation of the crime against Mr. Koren, officers discovered marijuana plants in Mr. Koren's home. Mr. Koren was arrested and then detained at his home for multiple hours while officers conducted their investigation.

34. Mr. Koren was ultimately transported to the HCJC by Defendant Transport Doe(s) for intake into the jail around noon.

35. Defendant Transport Doe(s) turned Mr. Koren over to the custody of the HCJC in a manner which they reasonably knew would result in constitutional harm.

36. Mr. Koren was concerned that he was being taken to the same facility as the men who had just broken into his home and attacked him.

37. When he arrived at the HCJC, Mr. Koren was brought the intake area of the jail for evaluation and processing. Mr. Koren promptly voiced his safety concerns while speaking to, or

within earshot of, Defendant Officers Howell, Swearingen, Collins, Ray, Jones, Defendant Sergeant Elsasser, and Defendant Intake Doe(s) (collectively, "Intake Defendants").

38. The Intake Defendants deemed Mr. Koren to be exhibiting "disorderly" behavior.

39. The Intake Defendants further claimed that Mr. Koren refused to submit to a strip search.

40. Mr. Koren was 70 years old and posed no threat to the several larger, stronger, and physically superior Intake Defendants, nor did he physically resist in any way.

41. Several of the Intake Defendants grabbed Mr. Koren, picked him up, and forcibly slammed him into a restraint chair where he was then bound at the wrists and ankles.

42. None of the Intake Defendants complied with any of the policies of the HCJC to approve, document, and seek to explain, their use of force, including their use of the restraint chair.

43. Defendant Nurse Graham was notified that Mr. Koren had been placed in the restraint chair. Specifically, Defendant Nurse Graham noted, "CO informed this nurse that [Mr. Koren] ha[d] been placed in the restraint chair because he refuse[d] a strip search for drugs."

44. Defendant Nurse Graham failed to conduct any medical examination of Mr. Koren to determine whether he medically appropriate for admission to the jail, more less placement in a restraint chair.

45. Defendant Nurse Graham instead perfunctorily checked the straps binding Mr. Koren's wrists and ankles to the restraint chair. She consented to Mr. Koren's detention in the restraint chair. She also consented to his transportation "to psych," the psychiatric area of the HCJC located on the second floor of the north building of the jail identified as "North 21."

46. Intake Defendants wheeled Mr. Koren out of the intake area strapped to the chair, took him across an enclosed walkway to North 21, and deposited him in the psychiatric area to which Nurse Graham referred.

47. Mr. Koren then sat immobile and lashed to the restraint chair for nearly five hours.

48. Mr. Koren was not allowed any opportunity to stand, stretch, or exercise his limbs during any of his time in the restraint chair.

49. Mr. Koren was not allowed to use the restroom during any of his time in the restraint chair. Mr. Koren was finally forced to urinate upon himself and then sit in his own waste for hours.

50. Defendant Nurse Hale first encountered Mr. Koren at the beginning of his ordeal, at approximately 12:30 p.m., and noted that Mr. Koren had been, "placed in restraint chair in intake by intake correction officers for disorderly behavior."

51. Defendant Nurse Hale herself observed and noted no such behavior, but rather noted that Mr. Koren was alert, responsive to questions, and, most critically, was pleasant and relaxed.

52. Nevertheless, Nurse Hale participated in Mr. Koren's continued detention in the restraint chair and took no steps to secure his release.

53. Nurse Hale observed Mr. Koren bound in the restraint chair at least nine times during the next two hours. Each time she did so, she found him to be similarly alert, responsive to questions, pleasant, and relaxed. During her final interaction with Mr. Koren, Defendant Nurse Hale noted that she even provided Mr. Koren with a meal.

54. Throughout this entire period, however, Defendant Nurse Hale continued to participate in Mr. Koren's ongoing detention in the restraint chair and she took no steps to secure his release.

55. Defendant John/Jane Doe 11, upon information and belief, was another nurse, or other medical professional, who observed Mr. Koren during his time in the restraint chair.

56. Defendant John/Jane Doe 11 made notations of observations spanning the next hour of Mr. Koren's time in the restraint chair that nearly mirrored those of Defendant Nurse Hale,

reiterating on multiple occasions that Mr. Koren appeared alert, responsive to questions, pleasant, and relaxed.

57. Throughout this entire period, however, Defendant John/Jane Doe 11 also continued to participate in Mr. Koren's ongoing detention in the restraint chair and took no steps to secure his release.

58. Defendant Paramedic Taylor also observed Mr. Koren during his time in the restraint chair.

59. Defendant Taylor made notations during Mr. Koren's final half hour in the restraint chair that, yet again, reiterated that Mr. Koren appeared alert, responsive to questions, pleasant, and relaxed.

60. Defendant Taylor also continued to participate in Mr. Koren's ongoing detention in the restraint chair and took no steps to secure his release.

61. During his time in the restraint chair, Mr. Koren was under the observation, care, supervision, and control of Defendant Nurses Graham, Hale, Paramedic Taylor, Defendant John/Jane Doe 11, and Defendant Medical Doe(s) (collectively, "Housing Unit Medical Defendants").

62. Throughout Mr. Koren's nearly five hours in the restraint chair the Housing Unit Medical Defendants participated in his ongoing detention, took no steps to secure his release, and/or were deliberately indifferent to his constitutional rights.

63. During his time in the restraint chair, Mr. Koren was also under the observation, care, supervision, and control of Defendant Officers Brown, Sturgeon, Spencer, Bucker, Pierani, Herbig, Collini, Defendant Sergeant Kilday, Defendant John Doe 6, and Defendant Housing Unit Doe(s) (collectively, "Housing Unit Corrections Defendants")

64. Throughout Mr. Koren's nearly five hours in the restraint chair the Housing Unit Corrections Defendants participated in his ongoing detention, took no steps to secure his release, and/or were deliberately indifferent to his constitutional rights.

65. At no point during Mr. Koren's nearly five hours in the restraint chair was he seen or evaluated by a doctor or psychiatrist/psychologist including, without limitation, Defendant Medical Doe(s) who were deliberately indifferent to his constitutional rights.

66. After several hours, Mr. Koren was wheeled back to the intake area still in the restraint chair from which he was ultimately released.

67. The strip search which the Intake Defendants later claimed was the reasonable penological justification for Mr. Koren being placed in the restraint chair was neither conducted nor requested following his release from the restraint chair.

68. Mr. Koren was held in the HCJC until he was able to see a judge on the morning of January 8, 2019 and arrange for his bail and release. Mr. Koren bore the indignity of wearing and sleeping in his urine-stained pants until his ultimate release that following day.

69. Mr. Koren filed a complaint with Defendant Sheriff Neil's office regarding his detention in the restraint chair. Mr. Koren's complaint was reviewed by the Internal Affairs Section, which found that the "use of the restraint chair during this incident was within the guidelines of the Hamilton County Policy and Procedure."

70. The findings of the Internal Affairs Section that the "use of the restraint chair during this incident was within the guidelines of the Hamilton County Policy and Procedure" were adopted and ratified by Defendants Neil and Schoonover. In so doing, the actions of all defendants were adopted and ratified by Defendants Neil and Schoonover.

71. Defendant Sheriff Neil enacted policies and pursued customs related to restraint chairs which were deliberately indifferent to the rights of individuals such as Mr. Koren, resulted

in excessive force, the denial of Due Process, and failed to adequately train and supervise the use of such devices.

72. It is was the policy or custom of Defendant Sheriff Neil, in his official capacity as the policymaker for the Hamilton County Sheriff's Office, to utilize restraint chairs liberally, punitively, and in ways which served no reasonable penological interest, particularly during the intake process. Public records reveal that hundreds of citizens every year are placed in a restraint chair in the HCJC in much the same manner as Mr. Koren. Most of these citizens were deemed to have been nothing more than "uncooperative."

73. Defendant Sheriff Neil enacted policies and pursued customs related to strip searches which were deliberately indifferent to the rights of individuals such as Mr. Koren, resulted in excessive force, the denial of Due Process, and failed to adequately train and supervise the use of such devices. .

74. It was the policy or custom of Defendant Sheriff Neil to utilize strip searches liberally, without probable cause, and in ways which served no reasonable penological interest.

75. These policies or customs were enacted and pursued with full knowledge that the constitutional deprivation suffered by Mr. Koren was a foreseeable result.

76. Mr. Koren was placed and held in the restraint chair as a direct and proximate result of these policies or customs. These policies or customs were therefore the proximate cause of the deprivation of Mr. Koren's civil rights.

77. Defendant NaphCare enacted policies or pursued customs related to restraint chairs which were deliberately indifferent to the rights of individuals such as Mr. Koren, resulted in excessive force, the denial of Due Process, and failed to adequately train and supervise the use of such devices.

78. These policies or customs were enacted and pursued with full knowledge that the constitutional deprivation suffered by Mr. Koren was a foreseeable result.

79. Mr. Koren was placed and held in the restraint chair as a direct and proximate result of these policies or customs. These policies or customs were therefore the proximate cause of the deprivation of Mr. Koren's civil rights.

80. The above referenced policies or customs of Defendants Sheriff Neil and NaphCare violated Mr. Koren's right to be free from excessive force and his right to Due Process.

81. At all times relevant to this action, all defendants acted recklessly, intentionally, with wanton and willful disregard, and with deliberate indifference towards the rights and safety of Mr. Koren. All defendants acted under color of state law.

## V. Cause of Action- 42 U.S.C. § 1983

82. All defendants have, under color of state law, through their actions, ratifications, and/or policies or customs, subjected Mr. Koren to excessive force and failed to protect him from such force thus depriving him of rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution.

83. All defendants have, under color of state law, through their actions, ratifications, and/or policies or customs, denied Mr. Koren his rights to Due Process including the privileges and immunities secured to him by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

84. Mr. Koren suffered injuries as a result the actions of all defendants including, without limitation, loss of liberty, physical injury, pain, and emotional distress. Mr. Koren continues to suffer both physically and emotionally in the wake of these events.

85. All defendants directly and proximately caused the injuries suffered by Mr. Koren.

<u>Prayer for Relief</u>

WHEREFORE, Paul Koren prays that this Court:

1. Award him compensatory damages in an amount to be shown at trial;

2. Award him punitive damages against the defendants in an amount to be shown at trial;

3. Award him his reasonable attorney's fees, costs, and disbursements;

4. Grant to him such additional relief as the Court deems just and proper.

Respectfully Submitted,

/s/ *Paul M. Laufman*
Paul M. Laufman (0066667)
Gregory A. Napolitano (0068671)
LAUFMAN NAPOLITANO, LLC
4310 Hunt Road
Cincinnati, OH  45242
(513) 621-4556
(513) 621-5563 Fax
plaufman@LN-lawfirm.com
gnapolitano@LN-lawfirm.com
*Counsel for Plaintiff, Paul Koren*

**JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.

/s/ *Paul M. Laufman*
Paul M. Laufman (0066667)