UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ESTATE OF PAUL KOREN,
      Plaintiff,

      vs.

SHERIFF JIM NEIL, *et al.*,
      Defendants.

Case No. 1:21-cv-9
Hopkins, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

Plaintiff Paul Koren[1] initiated this civil rights action on January 6, 2021. This matter is before the Court on plaintiff's motion for leave to file an amended complaint (Doc. 26), plaintiff's motion to hold the calendar in abeyance (Doc. 27), and defendants' motion for expedited bifurcated discovery on allegations concerning former Sheriff Jim Neil (Doc. 33). Appropriate response and reply memoranda have been filed (Docs. 32, 36, 37, and 40). On July 24, 2024, these motions were referred to the undersigned for consideration, pursuant to 28 U.S.C. § 636(b)(1) and (3). (Doc. 44).

## I. Background

The factual allegations in plaintiff's complaint were previously summarized as follows:

Koren is a seventy-year-old retiree. In the early morning hours of January 7, 2019, he was attacked in his home by armed assailants seeking to rob him. Law enforcement officials responded and arrested several of the assailants. While they were still in Koren's home, however, the law enforcement officials discovered marijuana plants and subsequently arrested Koren as well.

After arresting Koren, the law enforcement officials took him to the Hamilton County Justice Center ("HCJC") in Cincinnati, Ohio. While in the jail's intake area, Koren state[d] that he "was concerned that he was being taken to the same facility as the men who had just broken into his home and attacked him." After "voic[ing] his safety concerns" within earshot of several of the jail's intake officers, Koren states that they "deemed [him] to be exhibiting 'disorderly' behavior," and "claimed that [he] refused to submit to a strip search." Several of the intake officers then "grabbed Mr. Koren, picked him up, and forcibly slammed him into a restraint

---

[1] Paul Koren died on January 18, 2024. (Doc. 41). The executor of his estate has been substituted as plaintiff, pursuant to Federal Rule of Civil Procedure 25(a)(1). (Doc. 43).

chair where he was then bound at the wrists and ankles."

The intake officers then informed [former] Defendant Nurse Graham, a NaphCare employee who provided medical services at HCJC, that Koren had been "placed in the restraint chair because he refuse[d] to submit to a strip search for drugs." Nurse Graham consented to have Koren wheeled in the restraint chair to the jail's psychiatric area.

After he arrived in the jail's psychiatric area, Koren continued to be held in the restraint chair. During this time, Koren states that multiple NaphCare employees monitored and cared for him, including [former] Defendants Nurse Hale, Medic Taylor, and several other John/Jane Doe medical professionals. While monitoring Koren, Nurse Hale, Medic Taylor, and a John/Jane Doe medical professional each allegedly noted that Koren was "alert, responsive to questions, pleasant, and relaxed." Nonetheless, while in the chair, Koren "was not allowed any opportunity to stand, stretch, or exercise his limbs," nor was he allowed to use the restroom. Consequently, Koren was "forced to urinate upon himself and then sit in his own waste for hours."

 After being held in the jail's psychiatric area for a few hours, Koren "was wheeled back to the intake area still in the restraint chair[,] from which he was ultimately released." In total, he had spent nearly five hours in the restraint chair. Koren states that, after he was released, no one either requested or performed a strip search. He was then held in the HCJC until he was able to see a judge on the morning of January 8, 2019, at which point he arranged for his bail and release.

After his release, Koren filed a complaint with the Hamilton County Sheriff's Department regarding his detention in the restraint chair. The Department's Internal Affairs Section ("Internal Affairs") reviewed that complaint and concluded that the "use of the restraint chair during this incident was within the guidelines of the Hamilton County Policy and Procedure."

At the times relevant here, [former] Defendant Jim Neil was the Hamilton County Sheriff, and [former] Defendant Mark Schoonover was his Chief Deputy Sheriff in charge of HCJC operations. After Internal Affairs issued its report detailing the results of its investigation, Koren states that Neil and Schoonover "adopted and ratified" the investigation's conclusions.

Koren also alleges that the events of January 7 were not an isolated incident. Rather, he states that this incident resulted from customs or policies instituted by then-Sheriff Neil regarding the use of restraint chairs and strip searches "which were deliberately indifferent to the rights of individuals such as Mr. Koren." Further, Koren states "[p]ublic records reveal that hundreds of citizens every year are placed in a restraint chair in the HCJC in much the same manner as Mr. Koren.

2

> Most of these citizens were deemed to have been nothing more than 'uncooperative.'"

(Doc. 20 at PAGEID 159-61) (citations to Doc. 1 and footnotes omitted).

Plaintiff initiated this action pursuant to 42 U.S.C. § 1983 alleging that various defendants violated his constitutional right to be free from excessive force.  Relevant here, plaintiff also sued former Sheriff Jim Neil in both his individual and official capacities.  (Doc. 1 at ¶ 4).  The District Judge dismissed both of plaintiff's claims against Neil, pursuant to Federal Rule of Civil Procedure 12(b) without prejudice.  (Doc. 20).

Pursuant to the calendar order in this matter (Doc. 23), motions to amend the pleadings and/or add additional parties were to be filed no later than March 31, 2023.  On March 15, 2023, plaintiff filed the pending motion for leave to file an amended complaint (Doc. 26).  Plaintiff's first amended complaint seeks to reinstate the claims against former Sheriff Neil in both his individual and official capacities.  (Doc. 26-1 at ¶ 4).  Although named as a defendant who "participated in Mr. Koren's continued detention in the restraint chair and took no steps to secure his release," in plaintiff's original complaint, plaintiff's proposed amended complaint alleges—based on former NaphCare Nurse Katrina Hale's deposition—that:  "Nurse Hale and her supervisors met with Defendant Sheriff Neil;" Hale informed Neil "that she had observed Defendant Sturgeon similarly subjecting other inmates to mistreatment in a restraint chair on prior occasions;" "Neil typed a statement in Nurse Hale's presence;" "Neil then intentionally disregarded the concerns" Hale raised [and] "exonerated Defendant Sturgeon and/or the other Unit Defendants for their misconduct to avoid liability . . . and to preserve the continued unconstitutional use of the restraint chair within the HCJC;" and "Neil concealed Nurse Hale's statement and withheld the information she provided from the Internal Affairs Section . . .

3

knowing and intending that the destruction of evidence of the event . . . would occur in due course."  (Doc. 26-1 at PAGEID 221-22).

Defendants oppose plaintiff's motion for leave to file an amended complaint.  (Doc. 32). According to defendants, the amendment "is sought in bad faith, for dilatory purposes, will result in undue delay and prejudice to [Neil] and is futile."  (*Id.* at PAGEID 507).[2]  Specifically, defendants contend that the proposed amendment is futile to the extent that it purports to allege a supervisory liability claim against Neil in his individual capacity and a *Monell* claim against Neil in his official capacity.  (*Id.* at PAGEID 513-21).  Defendants further contend that the proposed amendment does not possess the reasonable evidentiary support required by Rule 11(b)(3).  (*Id.* at PAGEID 521-22).

Based on the pending motion for leave to amend the complaint, plaintiff also moves to hold the calendar in abeyance.  (Doc. 27).  If leave to amend the complaint is granted, defendants move for "expedited bifurcated limited discovery on the specific allegations made against Neil in the proposed Amended Complaint."  (Doc. 33).  Plaintiff opposes defendants motion for expedited bifurcated discovery.  (Doc. 37).

## II.  Standard of review

Federal Rule of Civil Procedure 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Leave should be "freely give[n,]" Fed. R. Civ. P. 15(a)(2), absent "undue delay or bad faith in filing the motion, repeated failures to cure previously-identified deficiencies, futility of the proposed amendment, and lack of notice or undue prejudice to the opposing party."  *Knight Cap. Partners Corp. v. Henkel AG*

---

[2] It appears that defendants filed two copies of the same document as one entry (Doc. 32 at PAGEID 507-23 and 525-41).  For simplicity, the Court will cite only to the first copy of the document.  (Doc. 32 at PAGEID 507-23).

*& Co., KGaA*, 930 F.3d 775, 786 (6th Cir. 2019) (citing *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 805 (6th Cir. 2005)).  A proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss.  *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005); *Schoonover v. Hamilton Cty.*, No. 1:22-cv-767, 2024 WL 645220, at *2 (S.D. Ohio Feb. 15, 2024).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss, a complaint must comply with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Rule 8(a)).

A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice.  *Twombly*, 550 U.S. at 555.  A court examining the sufficiency of a complaint must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678–79.

## III. Analysis

### A. Plaintiff's Motion to File an Amended Complaint Should be Granted in Part and Denied in Part as Futile.

Defendants contend that plaintiff's motion for leave to amend was filed "in bad faith, for

dilatory purposes, will result in undue delay and prejudice to an opposing party and is futile."
(Doc. 32 at PAGEID 507). However, plaintiff filed his motion for leave to amend well before
the March 31, 2023 deadline to amend pleadings established in the District Court's calendar
order. (Doc. 23). Thus, defendants' contentions related to undue delay and dilatory purposes are
not well-founded.

As for bad faith and undue prejudice, defendants contend that plaintiff's counsel
"manipulated" Hale "into identifying Neil as the 'warden' with whom she spoke." (Doc. 32 at
PAGEID 521). Defendants further contend that plaintiff failed to develop the record by
deposing Kenya Lewis or Maria Perdikakis, Hale's supervisors who allegedly refute her version
of events, as required by Federal Rule of Civil Procedure 11(b)(3). (*Id.*).

Rule 11(b) provides, in relevant part:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney
> . . . certifies that to the best of the person's knowledge, information, and belief,
> formed after an inquiry reasonable under the circumstances . . .
> (3) the factual contentions have evidentiary support or, if specifically so identified,
> will likely have evidentiary support after a reasonable opportunity for further
> investigation or discovery . . . .

Rule 11(b)(3) "mandates that attorneys engage in a reasonable prefiling inquiry to ensure that a
pleading or motion is 'well grounded in fact[.]'" *King v. Whitmer*, 71 F.4th 511, 521 (6th Cir.
2023) (quoting *Merritt v. Int'l Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609, 626
(6th Cir. 2010)). A court "may sanction attorneys under Rule 11(b)(3) for factual assertions they
know—or after reasonable investigation should have known—are false or wholly unsupported."
*Id.*

In this case, plaintiff seeks to amend his complaint explicitly based on Hale's sworn
deposition testimony. (Doc. 26 at PAGEID 208-09). Hale testified that, after the restraint chair

incident at issue in this case, she complained to her supervisor, Kenya Lewis, about difficulties she was having with the particular corrections officer involved. (Doc. 28-1 at PAGEID 275). Lewis, according to Hale, told Hale to discuss her immediate concerns with the officer's sergeant, which she did. (*Id.* at PAGEID 276). However, "after repeated conversations regarding this individual," Lewis's supervisor, Maria Perdikakis "did have [Hale] follow up with a conversation with the warden following this incident, regarding that particular correction officer, which is when he was removed from the unit." (*Id.*). According to Hale:

> It was my first time in my years of working there ever being called to his office. So I just know it's on the first floor and it's not a good place to be called to. So I can't even recall what his name was. He took a statement from myself, with my director with me. And I do know, like I said, that officer was removed from that unit within a day or two and placed somewhere else in the jail at the time.

(*Id.* at PAGEID 276-77). Hale identified "the director" that accompanied her to the meeting as "Miss Lewis, and I spoke with her boss before going down, Maria Perdikakis." (*Id.* at PAGEID 277). Hale raised concerns only about this particular corrections officer. (*Id.* at PAGEID 278). The officer's treatment of Paul Koren motivated her conversation with "the warden," and the conversation occurred the day after Koren's restraint chair placement. (*Id.* at PAGEID 278-79). With regard to whom she spoke, the following colloquy occurred:

> [Counsel:] When you say "the warden," was it the sheriff himself at the time, Jim Neil, tall, also bald?
> [Hale:] Yeah, I believe so. Yeah. His office is immediately when you walk into the jail.
> [Counsel:] Yes. So you met with Sheriff Jim Neil himself?
> [Hale:] That was the first time I ever met him.
> [Counsel:] And you discussed Mr. Koren's case specifically?
> [Hale:] That case and a few others that had happened prior to this incident.

(*Id.* at PAGEID 279). As plaintiff's amendments are based explicitly on Hale's sworn deposition testimony, the Court does not find the amendments sought to be wholly unsupported or

7

motivated by bad faith or undue prejudice.

Defendants offer several declarations, including those of Kenya Lewis and Maria Perdikakis, to refute Hale's version of events.  (Docs. 29 and 30).  However, factual disputes are more appropriately considered later in the litigation process, after both sides have engaged fully in discovery.  *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir. 2000) (refusing to consider plaintiff's arson indictment in evaluating whether district court properly denied plaintiff's motion to amend insurance action to add a bad faith claim).  Indeed, even the futility evaluation "does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss." *Id.* at 420.  *See also Mattera v. Baffert*, 100 F.4th 734, 741 (6th Cir. 2024).

### B.  Plaintiff's Amendments Would Only Partly Withstand a Rule 12(b)(6) Motion.

By amending the facts alleged in the complaint, plaintiff seeks to reinstate the previously-dismissed 42 U.S.C. § 1983 claims against Neil in his official and individual capacities.  As the District Court explained previously:

> A plaintiff can sue a defendant under § 1983 in that defendant's individual capacity, official capacity, or both.  As the label suggests, an individual-capacity claim is directed against the person him or herself, and the liability for the conduct extends only to that person.  An official-capacity claim against a public employee under § 1983, by contrast, is really a claim against the individual's employer.  In other words, an official-capacity claim against an individual amounts to a *Monell* [*v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)] claim against the individual's employer. *Curtis v. Breathitt Cnty. Fiscal Ct.*, 756 F. App'x 519, 525 (6th Cir. 2018) ("An official capacity claim filed against a public employee generally represents another way of pleading an action against the public entity that agent represents.") (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  So, for example, if a plaintiff were to sue a county law-enforcement officer in the officer's official capacity, that is for all intents and purposes a *Monell* suit against the county itself.

(Doc. 20 at PAGEID 181-82). The Court will evaluate the futility of each claim individually.

### 1. The Purported Amendment to Reinstate the Individual Capacity Claim Against Neil Would be Futile.

The District Court previously explained the applicable standard for supervisory liability under § 1983 as follows:

> [I]ndividuals sued in their personal capacity under § 1983 are liable only for their *own* unconstitutional behavior. *See Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011). That is not to say that a supervisor is never liable unless he or she directly participates in the incident. But to establish that a supervisor is liable, the Sixth Circuit has held that the plaintiff must show, at the very least, "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Sexton v. Cernuto*, 18 F.4th 177, 185 (6th Cir. 2021) (quoting *Doe v. Claiborne Cnty.*, 103 F.3d 495, 511 (6th Cir. 1996)). Moreover, supervisory liability will not attach based on "a mere failure to act." *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021).

(Doc. 20 at PAGEID 183-84).

In this case, plaintiff's proposed amended complaint alleges that, the day after the incident at issue, Nurse Hale and her supervisors met with then-Sheriff Neil. (Doc. 26-1 at ¶¶ 53-54). Hale told Neil about defendant Sturgeon's alleged mistreatment of Koren and that she had observed Sturgeon "similarly subjecting other inmates to mistreatment in a restraint chair on prior occasions." (*Id.* at ¶¶ 56-57). Neil typed a statement describing the incident, confirmed its accuracy, and then "concealed Nurse Hale's statement and withheld the information she provided from the Internal Affairs Section to avoid liability for his department and his employees and to preserve the continued unconstitutional use of the restraint chair within the HCJC." (*Id.* at ¶¶ 58-63). Neil allegedly reassigned Sturgeon to a different unit within the HCJC but took no further action. (*Id.* at ¶ 62). Neil's failure to take additional action "caused" any videos of the incident "to be destroyed in due course," "Nurse Hale's identity and availability as an eyewitness

9

to be withheld," and the "destruction of . . . memories of other witnesses." (*Id.* at ¶¶ 67-69).

Those allegations, taken as true and drawing all reasonable inferences in favor of plaintiff, would not withstand a Rule 12(b)(6) motion. Although veiled with active verbs, plaintiff alleges that the day after the incident, Neil heard, confirmed, and recorded Hale's concerns about Sturgeon's use of the restraint chair in the psychiatric unit; reassigned Sturgeon out of the psychiatric unit; and then took no further action whatsoever. During the nine months between the January 7, 2019 incident and Koren's September 2019 complaint to Internal Affairs, videos were recorded over in due course and memories faded. Far from allegations that Neil somehow encouraged or directly participated in the allegedly unconstitutional treatment of Koren, plaintiff alleges only that Neil learned about the incident the day after it occurred and reassigned Sturgeon to another section of the HCJC. Such allegations do not give rise to supervisory liability under § 1983. *See Frodge v. City of Newport*, 501 F. App'x 519, 532 (6th Cir. 2012) (finding that "failure to discipline and failure to act do not constitute 'active constitutional behavior' as required" to impose supervisory liability for subordinate's conduct) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). *See also Day v. DeLong*, 358 F. Supp. 3d 687, 704 (S.D. Ohio 2019) (finding "mere 'ratification' of conduct by failing to investigate the incident and failing to discipline . . . insufficient to make supervisors liable for their subordinates' conduct"). Accordingly, plaintiff's motion for leave to amend the complaint to reinstate the individual capacity claim against Neil should be denied as futile.

### 2. The Purported Amendment to Reinstate the *Monell* Claim Against Neil Would Not be Futile.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Franklin v. Franklin Cty.*, ___ F.4th ___, 2024 WL 3823715, at *4 (6th

10

Cir. Aug. 15, 2024) (quoting *Monell*, 436 U.S. at 694)). To establish municipal liability under §

1983, a plaintiff "must demonstrate that the alleged federal violation occurred because of a

municipal policy or custom." *Id.* (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir.

2013)). There are four avenues a plaintiff may use to establish a municipality's illegal policy or

custom: (1) the municipality's legislative enactments or official agency policies; (2) ratification

by officials with final decision-making authority; (3) a policy of inadequate training or

supervision; or (4) a custom of tolerance or acquiescence in federal rights violations. (Doc. 20 at

PAGEID 188). *See also Franklin*, 2024 WL 3823715, at *4 (quoting *Thomas v. City of

Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). "Regardless of which theory the plaintiff

pursues, however, the plaintiff must demonstrate that the local government's conduct was a

'moving force behind the alleged violation.'" (Doc. 20 at PAGEID 188) (quoting *North*, 754 F.

App'x at 386).

      In this case, plaintiff is pursuing the second and fourth avenues to establish a municipal

policy or custom for § 1983 liability. The Court will evaluate these both in turn.

### i. Ratification by Officials with Final Decision-Making Authority

      "The Sixth Circuit recognizes two methods for finding ratification: (1) when an

individual with policymaking authority issues a final decision affirming a subordinate's

decision[,] . . . thereby adopting it as [governmental] policy, and (2) when a policymaker fails to

meaningfully investigate the acts of a subordinate." *O'Neill v. Adams Cnty. Jail*, No. 1:23-cv-

200, 2024 WL 3754879, at *6-7 (S.D. Ohio Aug. 12, 2024) (Cole, J.) (quoting *Meyers v.

Cincinnati Bd. of Educ.*, 343 F. Supp. 3d 714, 729 (S.D. Ohio 2018)). The first method requires

the official's "affirmative approval of a particular decision made by a subordinate." *Feliciano v.*

*City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993). The second method requires the official's

"failing to meaningfully investigate and punish allegations of unconstitutional conduct." *Wright*

*v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020) (citing *Leach v. Shelby Cty. Sheriff*, 891 F.2d

1241, 1247-48 (6th Cir. 1990)). "The ratification theory of municipal liability does not require

proof of a pattern or custom." *Alsaada v. City of Columbus*, 536 F. Supp. 3d 216, 270 (S.D.

Ohio 2021) (Marbley, J.), *modified sub nom. Alsaada v. City of Columbus*, *Ohio*, No. 2:20-cv-

3431, 2021 WL 3375834 (S.D. Ohio June 25, 2021) (citing *Wilson v. Louisville-Jefferson Cnty.*

*Metro Gov't & Brett Hankison*, No. 3:19-cv-00739, 2020 WL 981717, at *2 (W.D. Ky. Feb. 26,

2020)). "Instead, ratification of a single violative act is enough for municipal liability to attach."

*Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

"For ratification purposes, whether policymaking authority exists is a question of state

law." *O'Neill*, 2024 WL 3754879, at *7 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112,

124 (1988) ("[T]he identification of policymaking officials is a question of state law. 'Authority

to make [governmental] policy may be granted directly by a legislative enactment or may be

delegated by an official who possesses such authority, and of course, whether an official had

final policymaking authority is a question of state law.'" (quoting *Pembaur*, 475 U.S. at 483)

(plurality opinion))). The Hamilton County Sheriff has final authority over the HCJC. *See* Ohio

Rev. Code § 341.01 ("The sheriff shall have charge of the county jail and all persons confined

therein. He shall keep such persons safe, attend to the jail, and govern and regulate the jail

according to the minimum standards for jails in Ohio. . . ."). Neil is therefore an official with

final decision-making authority under Ohio law.

Plaintiff relies on the first method of "ratification"—showing an illegal policy or custom

by demonstrating that an official with final decision-making authority ratified illegal actions.

(Doc. 36 at PAGEID 566).[3]  Plaintiff alleges that Neil, as an official with final decision-making

authority, "adopted and ratified" the Internal Affairs Section's investigation into Koren's

treatment, and therefore "adopted and ratified" the illegal actions of his subordinates.  Plaintiff

alleges that "[i]nmates like Mr. Koren who are bound in a restraint chair are required by the

policies of both the Hamilton County Sheriff and its private medical provider to be given

opportunities to use the restroom, stand, stretch, and/or exercise their limbs at regular intervals."

(Doc. 26-1 at ¶ 41).  Yet, despite such policies, defendant corrections officers refused Koren's

requests to do so "even though he was pleasant, relaxed, compliant, and posed no threat to

himself or others."  (Doc. 26-1 at ¶¶ 45-46).  Nurse Hale, deeply offended by the way in which

Koren was treated, reported her concerns about Defendant Sturgeon to Sheriff Neil.  Nurse Hale

specifically described the incident with Koren to Neil, identifying defendant Sturgeon's

mistreatment of Koren, and informed Neil she had observed Sturgeon similarly subjecting other

inmates to mistreatment in a restraint chair on prior occasions.  (*Id.* at ¶¶ 54-57).  Despite typing

up Hale's statement in her presence, Neil withheld Hale's statement from the Internal Affairs

Section (*Id.* at ¶¶ 58-59, 63) and "merely reassigned" Sturgeon to another unit within the HCJC

(Doc. 26-1 at ¶ 62).  When the Internal Affairs Section found no policy violation in Koren's

treatment, Neil allegedly "accepted, adopted, and ratified" the Internal Affairs Section's

conclusion (*Id.* at ¶ 74) and "the mistreatment of Mr. Koren" (*Id.* at ¶ 76).  Neil, a policymaking

official, affirmatively approved his subordinate's mistreatment of Koren when he placed and

retained Koren in a restraint chair under the circumstances alleged.  Taking Koren's allegations

---

[3] The undersigned notes that in analyzing the original complaint, the District Judge considered only the second method for finding *Monell* liability under the ratification theory.  (Doc. 20 at PAGEID 188-89).

are true, the proposed amended complaint plausibly states a *Monell* claim under the first

ratification method of liability described above.

### ii. Custom of Tolerance or Acquiescence

As the Sixth Circuit recently reiterated:

> To succeed on a municipal-liability claim under an "inaction" theory, a plaintiff must show "(1) the existence of a clear and persistent pattern of" unconstitutional conduct; (2) "notice or constructive notice" on the part of the municipality; (3) the municipality's 'tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction"; and (4) "that the [municipality's] custom was the 'moving force' or direct causal link in the constitutional deprivation."

*Franklin*, 2024 WL 3823715, at *6 (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429

(6th Cir. 2005)). A plaintiff must allege more than a single instance to establish a "clear and

persistent pattern," although the number required is somewhat unclear. *Id.* Five similar

incidents over a three year period have been deemed sufficient to constitute a pattern, but three

instances revealed in a single investigation were found insufficient. *Id.* (citing *Simpkins v. Boyd

Cnty. Fiscal Ct.*, No. 21-5477, 2022 WL 17748619, at *13 (6th Cir. Sept. 2, 2022) and *Peet v.

City of Detroit*, 502 F.3d 557, 568 (6th Cir. 2007) respectively). In addition, the "similarity

between a plaintiff's claim and an alleged pattern of constitutional violations 'must be

particularized.'" *Id.* (quoting *Berry v. Delaware Cnty. Sheriff's Off.*, 796 F. App'x 857, 862 (6th

Cir. 2019)). Thus, to ultimately prevail on such a claim, a plaintiff must demonstrate that prior

incidents violated the same constitutional rights as plaintiff's and violated them in the same way,

but the alleged pattern "need not be identical, or even 'almost identical' to that which a plaintiff

alleges." *Id.* (quoting *Simpkins*, 2022 WL 17748619, at *13).

In this case, plaintiff's proposed amended complaint alleges a "longstanding pattern of

14

unconstitutional restraint chair usage at HCJC prior to Mr. Koren's arrest" under which "individuals, like Mr. Koren, did not offer any physical resistance, nor did they pose any threat to themselves or others." (Doc. 26-1 at ¶¶ 77, 79). The prior "individuals, like Mr. Koren were placed in a restraint chair for having done nothing more than being deemed by corrections officers to be 'disruptive,' or 'disorderly,' or otherwise 'uncooperative' . . . [or] for refusing an unconstitutional strip search." (*Id.* at ¶ 80). Plaintiff alleges those "individuals were placed in a restraint chair for punitive reasons which served no reasonable penological interests." (*Id.* at ¶ 81). Neil allegedly "took no action to stop" the practice despite "full knowledge of repeated unconstitutional uses of restraint chairs in the HCJC" and "tolerated and/or acquiesced to repeated unconstitutional uses of restraint chairs in the HCJC." (*Id.* at ¶¶ 81-82). Furthermore, plaintiff alleges, Neil's tolerance in the prior unconstitutional restraint chair use "existed prior to Mr. Koren's arrest and detention at the HCJC and was a moving force behind the excessive force used upon him." (*Id.* at ¶ 85). "Koren was placed and held in the restraint chair as a direct and proximate result of Defendant Sheriff Neil's custom of tolerance or acquiescence of these federal rights violations." (*Id.* at ¶ 88).

To avoid futility, a proposed amendment need only withstand a Rule 12(b)(6) motion to dismiss. *Mattera*, 100 F.4th at 741. At this stage, without the benefit of discovery and accepting plaintiff's allegations as true, the facts alleged are sufficient for the Court to draw the reasonable inference that Hamilton County had an informal clear and persistent pattern of using restraint chairs on cooperative detainees in violation of the Fourth and Fourteenth Amendments; that Neil had notice of the restraint chair use; that he tacitly approved or acquiesced to the allegedly unconstitutional restraint chair use; and the informal custom caused Koren to be subjected to the

unconstitutional use of a restraint chair while detained at the HCJC.

In contrast to the original complaint, which the District Judge found deficient (Doc. 20 at PAGEID 188), the proposed amended complaint alleges a pattern of repeated constitutional violations. Plaintiff alleges a "longstanding pattern of unconstitutional restraint chair usage prior to Mr. Koren's arrest," which showed that every year hundreds of individuals, who offered no physical resistance or threat to themselves or others, were placed in restraint chairs. (Doc. 26-1 at ¶¶ 77-79). In addition, like Mr. Koren, those individuals had done nothing more than being deemed by corrections officers to be "disruptive," "disorderly," or "uncooperative," or who "refus[ed] an unconstitutional strip search." (*Id.* at ¶¶ 80-81). Placing inmates in a restraint chair when they offer no physical resistance or threat to themselves or others gives rise to a reasonable inference that the placement was for no legitimate penological purpose and was not objectively reasonable. *Cf. Jennings v. Fuller*, 659 F. App'x 867, 871 (6th Cir. 2016). Sheriff Neil had "full knowledge" of these unconstitutional uses of restraint chairs but took no action to stop the widespread abuse. (*Id.* at ¶ 83). These allegations are sufficient to state a plausible claim for relief under a custom of tolerance or acquiescence in federal rights violations by Neil in his official capacity.

The Court concludes that plaintiff's amended complaint in this case alleges sufficient facts to state a *Monell* claim against Neil in his official capacity. Therefore, plaintiff's motion for leave to amend should be granted to the extent that it seeks to allege a *Monell* claim against Neil in his official capacity.

### C. Plaintiff's Motion to Hold Calendar in Abeyance is Denied as Moot.

Plaintiff moved to hold the calendar in abeyance "pending the filing of responsive

16

pleadings" to plaintiff's amended complaint. (Doc. 27). As the Court has now granted, in part, plaintiff's motion to file an amended complaint, and as the dates in the original calendar order (Doc. 23) have now expired, plaintiff's motion to hold the calendar in abeyance is moot.

**D. Defendants' Motion for Expedited Bifurcated Discovery is Denied.**

On April 5, 2023, defendants moved for "expedited bifurcated limited discovery on the specific allegations made against Neil in the proposed Amended Complaint in the interests of judicial economy and the potential personal prejudice to Neil these allegations represent." (Doc. 33 at PAGEID 542). For the reasons stated above, the Court will recommend denying the attempted resurrection of the claim against Neil in his individual capacity. The Court sees no undue prejudice in permitting the official capacity claim to proceed in the usual course. In addition, this case has been pending since January 6, 2021. Further delaying matters by bifurcating discovery will serve no one. Accordingly, defendants' motion for expedited bifurcated limited discovery will be denied.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's motion for leave to file an amended complaint (Doc. 26) is **GRANTED IN PART** as to plaintiff's *Monell* claim for municipal liability only;

2. Plaintiff's motion to hold the original calendar order in abeyance (Doc. 27) is **DENIED AS MOOT**;

3. Defendants' motion for expedited bifurcated limited discovery (Doc. 33) is **DENIED**.

**IT IS THEREFORE RECOMMENDED THAT:**

Plaintiff's motion for leave to file an amended complaint (Doc. 26) be **DENIED IN PART** as to plaintiff's attempt to resurrect a supervisory liability claim against Neil in his individual capacity.

Date: 9/12/2024

Karen L. Litkovitz
United States Magistrate Judge

FUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ESTATE OF PAUL KOREN,                                    Case No. 1:21-cv-9
      Plaintiff,                                       Hopkins, J.
                                                        Litkovitz, M.J.

      vs.

SHERIFF JIM NEIL, *et al*.,
      Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation within **FOURTEEN (14) DAYS** after being served with a copy thereof. This period may be extended further by the Court on timely motion by either side for an extension of time. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

19